UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| LEE WOOLVERTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:17 CV 170 ACL |
| | ) | |
| CITY OF WARDELL, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Lee Woolverton filed this action against Defendants City of Wardell, Casey Redden, Chris Rudd, Deputy Edward Holloway, Sheriff Tommy Greenwell, and Western Surety Company,[1] alleging violations of his constitutional rights resulting from an April 2016 traffic stop. Presently pending before the Court are the following motions: the Motion to Dismiss of Defendants City of Wardell, Officer Chris Rudd, and Officer Casey Redden (Doc. 41); and the Motion to Dismiss of Defendants Deputy Edward Holloway and Sheriff Tommy Greenwell (Doc. 43). The Motions are fully briefed and ripe for disposition.

## Background[2]

In his First Amended Complaint, Plaintiff sets forth five counts: (1) Count I, a 42 U.S.C. § 1983 claim against Defendants Rudd and Redden; (2) Count II, a § 1983 claim against Defendant Holloway; (3) Count III, a 42 U.S.C. § 1983 claim against the City of Wardell; (4) Count IV, a state law negligence claim against the City of Wardell; and (5) Count V, an action under sheriff's bond against Defendant Greenwell. Plaintiff states that Defendants Redden and

---

[1]Defendant Western Surety Company was dismissed from this action upon Plaintiff's Motion on January 29, 2018. (Doc. 39.)
[2]The Court's summary of Woolverton's claims is taken from the First Amended Complaint. (Doc. 40.)

1

Rudd were police officers employed by the City of Wardell, Missouri, at all relevant times; Defendant Holloway was employed as Deputy Sheriff of Pemiscot County, Missouri; and Defendant Greenwell was Sheriff of Pemiscot County, Missouri.

The First Amended Complaint alleges that Defendant Redden stopped the automobile Woolverton was driving on April 11, 2016, at 10:10 p.m., in the City of Wardell, for allegedly having loud music playing and a light out. Defendant Redden then contacted Defendant Rudd at about 10:13 p.m. to assist Redden with the stop. Defendant Redden in turn contacted the Pemiscot County Sheriff's dispatch and was told that Woolverton had a warrant out for his arrest from the City of Malden for failure to appear. Defendant Redden then placed Woolverton in handcuffs with his arms and hands behind his back and placed him in Redden's patrol vehicle. Woolverton alleges that his car was unreasonably searched by a drug dog under the control of Defendant Redden and was later unreasonably searched by Defendants Redden and Rudd. No contraband or other illegal items were found.

Woolverton claims that Defendant Rudd next told Woolverton he could "kick his ass," and called him derogatory names while he was securely sitting in handcuffs in Redden's police vehicle. He further alleges that, while his hands were cuffed behind his back, he opened the trunk of his vehicle because Rudd and Redden were unable to open the trunk. Woolverton claims that either Redden or Rudd slammed his head into the vehicle driven by Redden and applied a choke hold. Defendant Redden or Rudd then applied a "scissor move" to his leg, taking him to the ground and causing him to land face first in a road ditch. Defendant Holloway observed the actions of Redden and Rudd and did nothing to stop them. Woolverton alleges that, as a direct result of the scissor move, his right leg snapped, making an audible pop, and was severely broken. Woolverton told Holloway, Redden, and Rudd that his leg was broken, but

these Defendants still hauled him roughly about the ground and then into Redden's police vehicle, causing further pain and injury to his leg. Woolverton states that he offered no resistance to the requests of Defendants Redden, Rudd, or Holloway at any time during the incident. He claims that he suffered serious and continuing injuries as a result of the Defendants' actions.

On March 7, 2018, Defendants City of Wardell, Redden, and Rudd filed their Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 41.) Defendants Rudd and Redden argue that Count I should be dismissed for the following reasons: the claims against them in their official capacities are duplicative and fail to give rise to municipal liability; Count I fails to provide specific acts of Defendants Rudd and Redden constituting an unreasonable search or seizure; and they are entitled to qualified immunity on the individual capacity claims. Defendant City of Wardell moves for the dismissal of Count III on the basis that Plaintiff fails to allege facts indicating the City had a policy or custom that is so persistent and widespread as to have the effect and force of law. The City of Wardell argues that Count IV should be dismissed because Plaintiff fails to allege facts sufficient to subject the City of Wardell to municipal liability for the state law tort of negligence.

On March 13, 2018, Defendants Holloway and Greenwell moved for the dismissal of Counts II and V for failure to state a claim. (Doc. 43.) Defendant Holloway argues that Count II fails to state a claim for which relief may be granted because the facts stated in the First Amended Complaint fail to show that Holloway violated any constitutional rights of Plaintiff under the Fourth and Eighth Amendment. Defendant Greenwell claims that Count V fails to state a claim for relief because there is no respondeat superior liability in § 1983 claims and Plaintiff has failed to state any policy or custom that would be a basis for imposing liability

against Sheriff Greenwell.

Plaintiff admits that the official capacity claims against Defendants Redden and Rudd are duplicative of the claim against the City of Wardell and concedes to the dismissal of these claims. (Doc. 46.) Plaintiff opposes Defendants' Motions to Dismiss in all other respects. (Docs. 45, 46.)

### **Legal Standard**

The purpose of a motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint. To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim for relief "must include sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level." *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555 & n.3). This obligation requires a plaintiff to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

On a motion to dismiss, the Court accepts as true all of the factual allegations contained in the complaint, even if it appears that "actual proof of those facts is improbable," and reviews the complaint to determine whether its allegations show that the pleader is entitled to relief. *Id.* at 555-56; Fed. R. Civ. P. Rule 8(a)(2). The principle that a court must accept as true all of the allegations contained in a complaint does not apply to legal conclusions. *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

## Discussion

### I. Defendants Rudd and Redden

In Count I, Woolverton alleges that Rudd and Redden used excessive force on the following occasions: (1) when one or both slammed his head into a police vehicle; (2) when one or both took him to the ground while his hands were handcuffed behind his back causing his leg to break; (3) when one or both roughly hauled him about knowing his leg was broken; and (4) when one or both roughly hauled him into the police vehicle instead of calling an ambulance. (Doc. 40 at 7.) Woolverton claims that the actions of these Defendants were excessive, sadistic, and not reasonably necessary to investigate the alleged violations of law or to take him into custody for the City of Malden municipal court warrant.

#### A. Official Capacity Claims

Defendants first argue that the claims against them in their official capacities are duplicative and fail to give rise to municipal liability. As previously noted, Woolverton has conceded that the official capacity claims are duplicative and subject to dismissal. It is well-settled law that when a state or municipal official is sued in his official capacity, the claim is treated as a suit against the entity itself. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). "It is proper for a court to dismiss a claim against a government officer in his official capacity as duplicative or redundant if the claims are also asserted against the officer's governmental employer." *Caruso v. City of St. Louis*, No. 4:16CV1335 RWS, 2016 WL 6563472, at *1 (E.D. Mo. Nov. 4, 2016) (citing *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). Accordingly, the Court will dismiss the official capacity claims against Defendants Rudd and Redden.

### B. Individual Capacity Claims

Defendants next argue that Count I fails to provide specific acts of Defendants Rudd and Redden constituting an unreasonable search or seizure; and that they are entitled to qualified immunity on this claim.

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is not available "if an official 'knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [individual], or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury.'" *Id.* at 815 (quoting *Wood v. Strickland*, 420 U.S. 308, 322 (1975)). "The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (internal quotations omitted).

In determining whether an officer is entitled to qualified immunity, the Court employs a two-step analysis that asks: (1) whether the alleged facts, when viewed in the light most favorable to the plaintiff, demonstrate that the official's conduct violated a constitutional right; and (2) whether the constitutional right being asserted is clearly established. *Wallingford v. Olson*, 592 F.3d 888, 892 (8th Cir. 2010) (cited cases omitted). The Court may address either question first. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). "If either question is answered in the negative, the public official is entitled to qualified immunity." *Norris v. Engles*, 494 F.3d 634, 637 (8th Cir. 2007) (quoted case omitted). "To determine whether a right is

clearly established we ask whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *White v. McKinley*, 519 F.3d 806, 813 (8th Cir. 2008) (quoted case and internal quotation marks omitted).

Because the Court is addressing the issue of qualified immunity in a motion to dismiss, the answers to these two questions are entirely dependent upon what Woolverton alleges in the Complaint. *See Dornheim v. Sholes*, 430 F.3d 919, 926 (8th Cir. 2005) ("A rule 12(b)(6) dismissal based on qualified immunity is appropriate 'when the immunity is established on the face of the complaint.'") (quoting *Whisman v. Rinehart*, 119 F.3d 1303, 1309 (8th Cir. 1997)). Thus, to prevail on their Motion to Dismiss based on qualified immunity, the Police Officer Defendants "must show that they are entitled to qualified immunity on the face of the complaint." *Bradford v. Huckabee*, 394 F.3d 1012, 1015 (8th Cir. 2005).

### 1. Search and Seizure

Defendants first argue that Woolverton's unlawful search and seizure claim should be dismissed because it is flawed in its legal premise. Woolverton responds that he is not asserting an illegal search and seizure claim but, rather, is alleging an excessive force claim. The Court's review of the First Amended Complaint supports Woolverton's representation that Count I does not attempt to state a search and seizure claim. As such, Defendants' Motion will be denied as to this point.

### 2. Excessive Force

Defendants next argue that they are entitled to qualified immunity on Woolverton's excessive force claims because he has not adequately alleged that Defendants Rudd and Redden violated clearly established statutory or constitutional rights of which a reasonable person would have known.

7

The test for determining whether excess force was used is whether "the amount of force used was objectively reasonable under the particular circumstances." *Small v. McCrystal*, 708 F.3d 997, 1005 (8th Cir. 2013) (quoting *Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009)). *See also Hicks v. Norwood*, 640 F.3d 839, 842 (8th Cir. 2011) ("It is settled in this circuit that the Fourth Amendment's 'objective reasonableness' standard for arrestees governs excessive-force claims arising during the booking process."). The Court evaluates the reasonableness of an officer's use of force from the perspective of a reasonable officer on the scene, rather than with the benefit of hindsight. *Brown*, 574 F.3d at 496. "This calculus allows for the fact that police officers are often forced to make split-second decisions—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

At the first step of the qualified immunity analysis, the Court accepts the factual allegations of Plaintiff's Complaint as true and views all reasonable inferences in Plaintiff's favor. Under this standard, Woolverton sufficiently alleges a violation of his constitutional right to be free from excessive force. Specifically, Woolverton alleges that Defendants slammed his head into a police vehicle; took him to the ground while his hands were handcuffed behind his back, causing his leg to break; and roughly hauled him about and into a police vehicle, knowing his leg was broken. Woolverton contends that he offered no resistance to the requests of the Defendants at any time during this incident. He claims that he suffered "grave and continuing injuries to his body as a whole, head and right leg, in particular a comminuted fracture to his right knee area which is a serious medical condition." (Doc. 40 at 6.) Accordingly, the Court finds that, in the light most favorable to Plaintiff, Woolverton has sufficiently alleged facts that Defendants Rudd and Redden violated Woolverton's right to be free from excessive force.

Turning to the second step of the inquiry, the constitutional right asserted by Woolverton is clearly established. *See Chambers v. Pennycook*, 641 F.3d 898, 908 (8th Cir. 2011) (right to be free from excessive force causing more than "de minimis injuries" is a clearly established right under the Fourth Amendment's prohibition against unreasonable seizures of the person). Thus, the Court finds that with his allegations of excessive force, Woolverton has sufficiently asserted the violation of a clearly establish constitutional right to withstand the Defendants' Motion to Dismiss and, therefore, this point must be denied.

## II.     Defendant City of Wardell

Defendant City of Wardell next argues that Count III fails to state a claim because Woolverton does not allege facts indicating the City had a policy or custom that is so persistent and widespread as to have the effect and force of law. The City of Wardell argues that Count IV should be dismissed because Plaintiff fails to allege facts sufficient to subject the City of Wardell to municipal liability for the state law tort of negligence.

### A.     Count III

In Count III, Woolverton alleges that the City of Wardell failed to properly supervise or train its police officers in violation of 42 U.S.C. § 1983. Specifically, Woolverton states that Defendant Redden was arrested for felony parental kidnapping and aggravated stalking during the summer of 2015, prior to the incident at issue in this action. Woolverton alleges that the City of Wardell "through its officers and elected officials knew of these arrests and did nothing to discipline or train its chief of police Redden and as such was deliberately indifferent to the likely action of Redden being involved in constitutional violations of excessive force." (Doc. 40 at 11.) He further alleges that the City failed to "properly investigate the background of its chief of police, Redden, and other key police officials and to train them and to properly discipline them

9

after their violent propensities became known." *Id.* at 12. Woolverton argues that the City's "lack of action" constituted an unlawful custom or usage of the city. *Id.*

A municipality may not be liable under Section 1983 unless a constitutional violation was committed pursuant to an official custom, policy, or practice. *Johnson v. Blaukat*, 453 F.3d 1108, 1114 (8th Cir. 2006) (citing *Monell v. Dep't of Soc. Servs. Of the City of New York*, 436 U.S. 658, 690-91 (1978)). "There must be a causal connection between the municipal policy or custom and the alleged constitutional deprivation in order to state a valid claim under § 1983." *Ulrich v. Pope County*, 715 F.3d 1054, 1061 (8th Cir. 2013). In other words, the custom, policy, or practice must have been the "moving force" behind the violation. *Luckert v. Dodge Cnty*, 684 F.3d 808, 820 (8th Cir. 2012).

Accepting as true all factual allegations in the complaint, and viewing them in the light most favorable to the Plaintiff, the Court finds that Woolverton has failed to state a plausible claim of municipal liability against the City of Wardell. First, Woolverton's claim against the City is based on the flawed assumption that Redden's convictions for felony parental kidnapping and aggravated stalking demonstrate Redden's "violent propensities," requiring that the City discipline Redden. These charges, however, are not crimes of violence that would put the City on notice that Redden was likely to apply excessive force to inmates. Second, Woolverton combines policy and custom in his complaint, he has failed to allege facts sufficient to support the existence of either an unconstitutional policy or custom. Indeed, aside from his conclusory allegations that the City of Woolverton's "lack of action" regarding adequate background checks of its chief of police, Redden, and "other key police officials," Woolverton's allegations pertain solely to his injury. "Generally, an isolated incident of alleged police misconduct, such as [Plaintiff] alleges occurred here, cannot, as a matter of law, establish a municipal policy or

10

custom creating liability under § 1983." *Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (citation omitted).

Further, with respect to the failure to train or supervise, "[a] municipality may be liable under § 1983 for failure to train where (1) the municipality's training practices were inadequate; (2) the municipality was deliberately indifferent to the constitutional rights of others,...; and (3) an alleged deficiency in the training procedures actually caused the plaintiff's constitutional injury." *Rodgers v. Knight*, 781 F.3d 932, 942 (8th Cir. 2015) (citation and internal quotation omitted). "'A pattern of similar constitutional violations by untrained employees'" is ordinarily required to show deliberate indifference on a failure to train claim. *Crump v. Boester*, No. 4:14 CV 1975 RWS, 2016 WL 1624017, at *3 (E.D. Mo. Apr. 25, 2016) (quoting *Connick v. Thomson*, 563 U.S. 51, 62 (2011)).

Here, Woolverton's bare allegations, without any facts, that the City failed to properly train and supervise are insufficient to state a claim.

Thus, Defendant City of Wardell's Motion to Dismiss will be granted as to Count III.

**B.     Count IV**

In Count IV, Woolverton alleges that the City of Wardell is liable for the negligence of its officers and employees. Woolverton states that the City "has liability insurance for such negligence as required by Missouri Statute to waive sovereign immunity." (Doc. 40 at 13.) He further states that, the actions of Defendants Rudd and Redden, "if not intentional were negligent and excessive and unreasonably forceful and as a direct and proximate result the Plaintiff sustained damage…" *Id.*

11

Defendant City of Wardell argues that it is entitled to sovereign immunity on Count IV. Woolverton responds that the City of Wardell has liability insurance for negligence and has therefore waived sovereign immunity pursuant to Mo. Rev. Stat. § 537.600.

In Missouri, a public entity is afforded sovereign immunity from tort actions. *Trumbo v. Metropolitan St. Louis Sewer Dist.,* 877 S.W.2d 198, 201 (Mo. Ct. App. 1994). More specifically, under Mo. Rev. Stat. § 537.600, such sovereign immunity "as existed at common law in this state prior to September 12, 1977" bars a suit unless the injury alleged arises from (1) operation of a motor vehicle by an agent of a governmental entity, (2) a dangerous condition on the entity's property, or (3) under certain circumstances, the public entity has waived sovereign immunity by purchasing liability insurance. Mo. Rev. Stat. § 537.600; *Parish v. Novus Equities Co.,* 231 S.W.3d 236, 245 (Mo. Ct. App. 2007) (citations omitted). Under Missouri law, the plaintiff bears the burden of proving the existence of an insurance policy waiving sovereign immunity. *Hummel v. St. Charles City R–3 Sch. Dist.,* 114 S.W.3d 282, 284 (Mo. Ct. App. 2003).

The City of Wardell argues that it does not have liability insurance as alleged by Woolverton. The City has attached its policy, provided by Missouri Public Entity Risk Management Fund (MOPERM), which restricts coverage to the provisions of Mo. Rev. Stat. 537.600. (Doc. 48-1 at 3.) That is, the policy provides coverage for: (1) "injuries directly resulting from the negligent acts or omissions by public employees arising out of the operation of motorized vehicles...;" and (2) "injuries caused by the condition of a public entity's property if the plaintiff establishes that the property was in dangerous condition at the time of the injury…" *Id.*

This policy has been held not to waive sovereign immunity under section 537.610. *See*

*Hamilton v. City of Hayti*, No. 1:16CV54RLW, 2017 WL 836558, at * 3 (E.D. Mo. Mar. 2, 2017) ("As Plaintiff's state law tort claims…do not pertain to injuries stemming from the operation of motorized vehicles or the condition of Hayti's property, sovereign immunity applies, and Plaintiff is unable to demonstrate that Hayti has waived such immunity").

Woolverton has failed to present any evidence to show that the policy is not as represented by the City of Wardell. Thus, Woolverton has failed to meet his burden of proving the existence of an insurance policy waiving sovereign immunity.

Accordingly, the Motion to Dismiss of Defendant City of Wardell will be granted.

### III. Defendant Holloway

In Count II, Woolverton alleges that the following actions of Defendant Holloway violated 42 U.S.C. § 1983: (1) he failed to intervene to prevent the "unconstitutional taking down" of Woolverton by Defendants Redden and Rudd; (2) he "roughly hauled the Plaintiff about the ground knowing of his broken leg;" and (3) "knowing of the broken leg he instructed Redden and Rudd to place the Plaintiff in the Police Vehicle when he knew calling and[sic] ambulance was necessary." (Doc. 40 at 9.) Woolverton claims that Holloway's actions violated his Fourth and Eighth Amendment rights.

#### A. Failure to Intervene

An officer who fails to intervene to prevent a fellow officer's excessive use of force may be liable under 42 U.S.C. § 1983 under two different theories: (1) the officer was present at the arrest with an opportunity to prevent the excessive use of force; or (2) the officer was instrumental in assisting the actual attacker or aggressor to place the victim in a vulnerable position. *Rohrbough v. Hall*, No. 4:07CV00996 ERW, 2008 WL 4722742 (E.D. Mo. Oct. 23, 2008). The officer must have a "'realistic opportunity' to prevent the attack." *Id.*

13

Defendant Holloway argues that Woolverton's Amended Complaint does not set forth facts that Holloway had time to intervene and prevent the actions of Rudd and Redden. The undersigned disagrees. Woolverton alleges in the introductory portion of his First Amended Complaint that at "sometime during the stop of the Plaintiff and *Prior to the time that Rudd and Redden were applying the choke hold and taking the handcuffed plaintiff to the ground*, Defendant Holloway arrived at the scene." (Doc. 40 at 4) (emphasis added). He states that Defendant Holloway "observed the actions of Defendants Redden and Rudd and did nothing to stop their actions even though he could have and should have done so as a sworn public police officer and the ranking police officer on the scene and that he was present for a sufficient amount of time to learn of the abuse and do something to stop it." (Doc. 40 at 4.) Woolverton further alleges, in Count II, that Holloway "*arrived on the scene in ample time to prevent Redden and Rudd from using excessive force* to take the Plaintiff to the ground." *Id.* at 9 (emphasis added)

Accepting the First Amended Complaint's allegations as true, and liberally construing them in Woolverton's favor, the Court finds Woolverton has sufficiently pleaded a claim against Defendant Holloway for failure to intervene. He alleges Holloway arrived on the scene before Redden and Rudd took Woolverton to the ground, observed the excessive force incident, and could have prevented the alleged excessive force. The Court will deny Holloway's Motion to Dismiss as to this point.

### B. Deliberate Indifference to Serious Medical Needs

Holloway next argues that Woolverton's claim that Holloway violated his Eighth Amendment rights when he failed to call an ambulance does not state a claim for relief. He claims that the officers acted appropriately by transporting Woolverton in their patrol car to the hospital.

14

The Eighth Amendment[3] prohibits "cruel and unusual punishments" for those convicted of a crime. U.S. Const. amend. VIII. The Eighth Amendment's prohibition on cruel and unusual punishment may be violated where there is insufficient or no medical care rendered to an inmate. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). An inmate "advancing such a claim must, at a minimum, allege 'deliberate indifference' to his 'serious' medical needs." *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). In determining whether an official was deliberately indifferent, courts look to whether the inmate "suffered from an objectively serious medical need" and that the official knew of the medical need but nevertheless disregarded the medical need. *Scott v. Benson*, 742 F.3d 335, 340 (8th Cir. 2014).

Woolverton alleges that Holloway's act of directing Redden and Rudd to place Woolverton in the police vehicle with his hands cuffed behind his back instead of calling an ambulance was "intentional and deliberately indifferent to the serious medical needs of the Plaintiff and that the same caused the Plaintiff additional pain and injury to his leg." (Doc. 40 at 10.) Woolverton states that, as a direct result of the scissor move, his right leg "snapped and made an audible pop and was severely broken because of the fulcrum created in the scissor move." *Id.* at 5. He alleges that he told Defendants Holloway, Redden and Rudd that his leg was broken but Defendants still "hauled him roughly about the ground and then into Redden's police vehicle," where he was transported to the Hayti hospital with his hands still cuffed behind his back. *Id.* Woolverton alleges that the Hayti hospital was unable to properly care for his

---

[3]As a pretrial detainee, Woolverton's § 1983 claims are analyzed under the Fourteenth Amendment's Due Process Clause, as opposed to the Eighth Amendment. However, the Eighth Circuit Court of Appeals has determined that "[p]retrial detainees are entitled to the same protection under the Fourteenth Amendment as imprisoned convicts receive under the Eighth Amendment." *Kahle v. Leonard,* 477 F.3d 544, 550 (8th Cir. 2007). Thus, Eighth Amendment standards may properly be applied in this case.

"severely fractured leg;" and he was transferred to St. Francis Medical Center in Cape Girardeau, Missouri, which also could not care for his leg. *Id.* at 6. Woolverton was eventually transported to Barnes Hospital in St. Louis, Missouri via ambulance. *Id.*

Woolverton's allegations are sufficient to state a claim of deliberate indifference to serious medical needs against Holloway at this stage of the litigation. Woolverton's broken leg is clearly a serious medical need of which Holloway was aware. Holloway argues that a law enforcement officer transporting an injured detainee to a hospital rather than calling an ambulance is not a constitutional violation. While this may generally be true, Woolverton does not merely challenge Defendants' mode of transportation. Rather, Woolverton alleges that Defendants' excessive use of force caused Woolverton's obvious serious injury, Defendants continued to roughly handle Woolverton despite his complaints, Defendants roughly placed him into Redden's SUV with his hands still cuffed behind his back at Holloway's direction, and that Defendants' actions caused him to experience greater pain and injury. The Court finds that the First Amended Complaint alleges enough "factual matter (taken as true) to suggest" that "discovery will reveal evidence" to support the elements of Woolverton's § 1983 claim for deliberate indifference to his serious medical needs while in custody.

Thus, the Motion to Dismiss will be denied as to the claims asserted against Defendant Holloway in Count II.

IV.  **Defendant Greenwell**

In Count V, Woolverton states that Western Surety has provided a bond to Sheriff Tommy Greenwell in the sum of $50,000 for the period of January 1, 2015 through January 1, 2017, for the faithful performance of Sheriff Greenwell's duties as Sheriff. (Doc. 40 at 13.) He alleges that the actions of Defendant Holloway as described in Count II were negligent and

16

below the standards of care for a reasonable deputy or person." *Id.* at 14. He alleges that Sheriff Greenwell is vicariously liable for the actions of Holloway and is further liable for the actions of Rudd and Redden if they were commissioned as Deputy Sheriffs by Greenwell. *Id.* Woolverton therefore claims that Western Surety Company is liable on the bond for the negligent actions of Sheriff Greenwell and Deputy Holloway and for the actions of Rudd and Redden. *Id.*

Defendant Greenwell argues that Woolverton's allegations in Count V that Holloway was negligent are inconsistent with his claims in Count II that Holloway violated his constitutional rights under 42 U.SC. § 1983. He further argues that Woolverton's claims are barred by the doctrine of official immunity and the public duty doctrine.

Woolverton responds that he is alleging Count V in the alternative to Count II, which is permitted by the Federal Rules of Civil Procedure. He contends that his claim against Defendant Greenwell on his official bond due to the negligence of his deputies is proper under *Miller v. Owsley*, 422 S.W.2d 39 (Mo. 1967).

Although Counts II and V are inconsistent, the Federal Rules permit Woolverton to plead inconsistent claims. *See Franke v. Greene,* 4:11CV1860 JCH, 2012 WL 3156577, *5 (E.D. Mo. Aug. 2, 2012) (allowing counterclaimant to proceed on claim of quantum meruit/unjust enrichment and breach of contract and noting that, although counterclaimant could not recover on both theories, liberal policy of Rule 8(d) allowed him to plead both). Defendant Greenwell's Motion will, therefore, be denied on this basis.

As previously stated, Woolverton relies on *Miller* for the proposition that his claim is permitted under Missouri law. In *Miller*, a prisoner brought an action against the sheriff, chief deputy, and the surety on the official bonds for injuries he received by other inmates while incarcerated. 422 S.W.2d at 40. The Missouri Supreme Court held that, where the plaintiffs

17

were assaulted due to the officers' negligence, the Plaintiff had stated a claim against the officers and their surety for breach of official bonds due to the officers' failure to faithfully discharge the duties of their office. *Id.* at 41. Defendant Greenwell has not attempted to distinguish *Miller*, or point to any other authority to demonstrate that Woolverton's claim is not permitted under Missouri law.

The Court finds that, based on *Miller*, Woolverton has sufficiently stated a claim against Defendant Greenwell on his official bond for the negligence of Holloway.

Thus, Defendant Greenwell's Motion to Dismiss will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that the Motion to Dismiss of Defendants City of Wardell, Officer Chris Rudd, and Officer Casey Redden is **granted in part** and **denied in part** as follows:

The Motion is **granted** as to the official capacity claims against Defendants Rudd and Redden set forth in Count I.

The Motion is **granted** as to the claims against Defendant City of Wardell set forth in Counts III and IV.

The Motion is **denied** as to the individual capacity claims set forth against Defendants Rudd and Redden in Count I.

**IT IS FURTHER ORDERED** that the Motion to Dismiss of Defendants Deputy Edward Holloway and Sheriff Tommy Greenwell is **denied**.

s/Abbie Crites-Leoni
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 14th day of May, 2018.