UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| LEE WOOLVERTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. 1:17 CV 170 ACL |
| | ) |
| CITY OF WARDELL, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Presently pending before the Court is Plaintiff Lee Woolverton's Motion for New Trial. (Doc. 163.)

## Background

Woolverton filed this action against Defendants City of Wardell, Casey Redden, Chris Rudd, Deputy Edward Holloway, Sheriff Tommy Greenwell, and Western Surety Company,[1] asserting violations of his constitutional rights under 42 U.S.C. § 1983.  Woolverton alleged Defendants Rudd and Redden used excessive force during an April 11, 2016 traffic stop.  Rudd and Redden were police officers employed by the City of Wardell, Missouri, during the relevant time.

Redden stopped the automobile Woolverton was driving in the City of Wardell for allegedly having loud music playing and a license plate light out.  Redden then contacted Rudd to assist Redden with the stop.  The Pemiscot County Sheriff's dispatch told Redden that Woolverton had a warrant out for his arrest from the City of Malden for failure to appear.

---

[1] Defendants City of Wardell, Western Surety Company, Deputy Edward Holloway, and Sheriff Tommy Greenwell were dismissed from this action prior to trial.  The only remaining Defendants are Officers Chris Rudd and Casey Redden.

1

In his Amended Complaint, Woolverton alleged that Rudd and Redden used excessive force when one or both: (1) slammed his head into a police vehicle; (2) took him to the ground while his hands were cuffed behind his back, causing his leg to break; (3) roughly hauled him about, knowing his leg was broken; and (4) roughly hauled him into the police vehicle instead of calling an ambulance. Woolverton claimed that he suffered serious and continuing injuries as a result of the Defendants' actions.

This action was tried before a jury from August 24, 2020, through August 26, 2020. On August 26, 2020, the jury returned its verdict in favor of the Defendants on all of Plaintiff's claims. On the same date, the Court issued a Judgment in accordance with the jury's verdict. (Doc. 161.)

On September 11, 2020, Plaintiff filed the instant Motion for New Trial.

## Standard

Under Rule 59(a)(1)(A), "[a] new trial is appropriate when the first trial, through a verdict against the weight of the evidence, an excessive damage award, or legal errors at trial, resulted in a miscarriage of justice." *Gray v. Bicknell*, 86 F.3d 1472, 1480 (8th Cir. 1996). A miscarriage of justice does not result whenever there are inaccuracies or errors at trial; instead, the party seeking a new trial must demonstrate that there was prejudicial error. *Buchholz v. Rockwell Int'l Corp.*, 120 F.3d 146, 148 (8th Cir. 1997). "Motions for new trials are generally disfavored and will be granted only where a serious miscarriage of justice may have occurred." *United States v. Petroske*, 928 F.3d 767, 774 (8th Cir. 2019).

## Discussion

Woolverton requests a new trial on eleven separate grounds. He first argues that the Court erred in dismissing his claims against Defendant City of Wardell. Woolverton next argues

2

that the verdict was against the weight of the evidence. He then asserts eight claims of evidentiary error. In his last ground, Woolverton argues that his right to a fair trial was compromised by civil unrest occurring in the United States. The undersigned will discuss these claims in turn.

## I. City of Wardell Dismissal

Woolverton first argues that the Court erred in dismissing his 42 U.S.C. § 1983 claim against Defendant City of Wardell.

Defendant City of Wardell ("City") filed a motion to dismiss Woolverton's claims against the City under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Count III alleged a failure to train or supervise claim under 42 U.S.C. § 1983; and Count IV alleged a negligence claim. Woolverton only challenges the Court's dismissal of Count III.

The Court noted that a municipality may not be liable under § 1983 unless a constitutional violation was committed pursuant to an official custom, policy, or practice. (Doc. 51 at 10.) *See Johnson v. Blaukat*, 453 F.3d 1108, 1114 (8th Cir. 2006) (citing *Monell v. Dep't of Soc. Servs. Of the City of New York*, 436 U.S. 658, 690-91 (1978)). Further, "[t]here must be a causal connection between the municipal policy or custom and the alleged constitutional deprivation in order to state a valid claim under § 1983." *Ulrich v. Pope County*, 715 F.3d 1054, 1061 (8th Cir. 2013). In other words, the custom, policy, or practice must have been the "moving force" behind the violation. *Luckert v. Dodge Cnty*, 684 F.3d 808, 820 (8th Cir. 2012).

The Court found that Count III failed to allege facts indicating the City had an unconstitutional policy or custom. The undersigned further found that the charges at issue "are not crimes of violence that would put the City on notice that Redden was likely to apply excessive force to inmates." (Doc. 51 at 10.)

3

Woolverton argues that the Court erred in dismissing Count III because Redden's charges of parental kidnaping and aggravated stalking are crimes of violence. Assuming for the purpose of this Motion that these crimes are crimes of violence, the City's failure to take corrective action as to one employee does not establish a policy or pattern. Further, these crimes both arose out of domestic disputes that did not result in convictions, and are not related to the application of excessive force to arrestees. Thus, Woolverton's allegations that the City failed to properly train and supervise are insufficient to state a claim. The Court declines to reconsider its previous ruling dismissing Woolverton's claims against the City.

## II.     Weight of the Evidence

In his second ground for relief, Woolverton states, "[t]he verdict was against the weight of the evidence is made to preserve the record." (Doc. 164 at 4.)

"[T]he prevention of injustice is the overriding principle in deciding whether to grant a new trial on the ground that the verdict was against the weight of the evidence." *Leichihman v. Pickwick Int'l*, 814 F.2d 1263, 1267 (8th Cir. 1987). "A motion for new trial is addressed to the judicial discretion of the district court and will not be reversed except for a clear abuse of that discretion." *Id.* at 1267-68. "The court should reject a jury's verdict only where, after a review of all the evidence giving full respect to the jury's verdict, the court is left with a definite and firm conviction that the jury has erred." *Ryan v. McDonough Power Equip., Inc.*, 734 F.2d 385, 387 (8th Cir. 1984). Where reasonable minds can differ in evaluating the credible evidence, a new trial based on the weight of the evidence should not be granted. *Jacobs Mfg. Co. v. Sam Brown Co.*, 19 F.3d 1259, 1267 (8th Cir. 1994).

Based on all the evidence adduced at trial, the undersigned is not convinced that the jury erred in reaching its verdict. To the contrary, this case involved conflicting evidence regarding

4

the alleged excessive use of force incident during Woolverton's arrest, "and it is the jury's function to choose between plausible versions of the evidence." *Jacobs Mfg.*, 19 F.3d at 1267. The jury had ample evidence to reach the decision it did.

### III.     Evidentiary Rulings

An allegedly erroneous evidentiary ruling does not warrant a new trial unless the evidence was so prejudicial that a new trial would likely produce a different result." *Burris v. Gulf Underwriters Ins. Co.*, 787 F.3d 875, 880 (8th Cir. 2015) (internal quotation marks and citation omitted).  Woolverton challenges eight separate evidentiary rulings, which will be discussed in turn.

#### 1.     Reasons Redden is No Longer a Police Officer

Three of Woolverton's claims—Grounds Three, Four, and Five—relate to Redden's resignation from his law enforcement position.

##### a.     Ground Three

In his third ground for relief, Woolverton argues that the Court erred in not allowing him to question Redden about the reasons Redden is no longer a police officer.  He explains that the basis for the questioning is found in Plaintiff's Exhibit 8.  Woolverton states that the items in Exhibit 8 relate to prior bad acts committed by Redden.  Specifically, the documents refer to Redden's criminal charges of parental kidnapping and stalking, his giving up his law enforcement license, and his violations of an order of protection.  Woolverton acknowledges that this evidence would ordinarily be inadmissible under Federal Rule of Evidence 404(b), but argues that it is admissible in this case to show the mental state of Redden.  Woolverton contends that this evidence demonstrates that Redden was incompetent to act as a police officer.   He also

5

argues that the evidence is relevant under Rules 401 and 402, because it shows Redden was prone to act violently.

Defendants filed a Motion in Limine—Motion in Limine #1—to exclude from evidence Plaintiff's Exhibit 8, titled "Various reports regarding arrest of Chief Redden," as well as any testimony, questioning, or argument regarding the content contained therein.  (Doc. 126.)  The Court granted the Motion, on the basis that Redden was not convicted of any of the charges. Woolverton did not object to the exclusion of the exhibit itself, but argued that he should be able to inquire about the charges under Rule 608(b).

Defendants' Motion in Limine #6 requested the exclusion of "testimony, questioning or argument about Redden surrendering his license as a police officer or being fired or asked to leave his position as Chief of Police for the City of Wardell."  (Doc. 126 at 2.)

At the pre-trial hearing, Plaintiff's attorney explained that Redden was charged with violating an order or protection for conduct on February 14, 2017; ten months after the conduct alleged in the Complaint.  The order of protection was requested by Redden's ex-girlfriend, Kaitlyn Palmer.  As part of a guilty plea to the charge of violating the order of protection, Redden was required to surrender his law enforcement certification.  *Id.*  Plaintiff's attorney acknowledged that this was character evidence, but argued that it was relevant and admissible to show Redden's competence as an officer.  *Id.*

The Court held that evidence regarding Redden's resignation due to the violation of an order of protection was unrelated to the issue in this case of whether excessive force was applied during Woolverton's arrest.  The undersigned further noted that the reasoning for the forced resignation did not involve deceit or fraud.  *Id.  See Glaze v. Childs*, 861 F.3d 724, 726 (8th Cir. 2017) (upholding exclusion of evidence that Defendant officer was forced to resign after

6

violating institutional policy in excessive force case, finding evidence was "the type of propensity evidence that [Rule 404(b)] prohibits."); *see also United States v. Oaks,* 606 F.3d 530, 538 (8th Cir. 2010) ("Character evidence is of slight probative value and may be very prejudicial.  It tends to distract the trier of fact from the main question of what actually happened on the particular occasion.") (citation omitted).

Because the undersigned continues to believe these rulings were correct, Woolverton's motion for new trial on these grounds will be denied.  Neither the parental kidnapping charge nor the violation of the order of protection related to the events in this case or to Redden's duties as a police officer.  The order of protection was issued in 2017, approximately one year after Woolverton's arrest.  Any inquiry into the relationship of Redden and Ms. Palmer that led to the violation of the order of protection would not be relevant to the issues in this case.  To allow it would have required the introduction of additional evidence regarding the basis for the order of protection, the violation of the order of protection, Redden's plea bargain, and the terms of Redden's resignation with the City.  Undergoing such a mini-trial on collateral issues would have likely lead to confusion of the issues and undue delay.  Thus, this evidence was properly excluded as improper character evidence prohibited by Rule 404(b).

    **b.  Ground Four**

In his fourth ground for relief, Woolverton argues that the Court erred in not allowing him to cross-examine Redden regarding the reason Redden was no longer a police officer after Redden "opened the door" by stating that he had never been charged with excessive use of force in his employment.  Relying upon *Westcott v. Crinklaw*, 68 F.3d 1073 (8th Cir. 1995), he contends that Redden's testimony that he had never been reprimanded for excessive force gave the jury the false impression that his career as a police officer "was good."  (Doc. 164 at 6.)

7

In *Westcott*, an excessive force action brought when an officer shot and killed the plaintiff, the Eighth Circuit held that the exclusion of evidence regarding an officer's previous suspensions for shooting incidents was an abuse of discretion. 68 F.3d at 1078. The Court noted that the officer had testified that he had not fired his gun at a person in the line of duty and had served as a member of the police force continuously and uninterrupted, which gave the jury a favorable impression of his career as a police officer. *Id.* The excluded testimony was relevant to the officer's credibility. *Id.*

Here, Redden testified on direct examination that he had never been disciplined for using excessive force. Unlike the officer's testimony in *Westcott*, Redden's statement was truthful. Redden's resignation was not related to an excessive force incident in the line of duty, but, rather, resulted from the violation of an order of protection involving his ex-girlfriend. As previously discussed, evidence regarding Redden's violation of the order of protection and subsequent resignation is not relevant and was improper character evidence. Thus, Redden did not open the door to this line of questioning and the evidence was properly excluded.

    **c.  Ground Five**

Woolverton next argues that the Court erred in prohibiting him from inquiring on cross-examination regarding why Redden surrendered his law enforcement certification and regarding Redden's arrests before and after the incident under FRE 608(b).

Rule 608(b) provides that during cross-examination the court may allow inquiry into specific instances of a witness's conduct if the conduct is probative of the witness's character for truthfulness. Fed. R. Evid. 608(b).

Woolverton's argument is unavailing. The evidence at issue did not involve deceit or fraud. Woolverton fails to explain how this evidence would have been probative of Redden's

8

character for truthfulness. *See Glaze*, 861 F3d at 726 (court properly declined to allow inquiry about defendant's resignation under Rule 608(b) when proffered evidence did not involve deceit or fraud).

### 2. Time in Prison

Woolverton next argues that the Court erred in prohibiting him from inquiring as to whether Redden was incarcerated after Redden inquired as to whether Woolverton had spent time in prison. Woolverton explains that, because Defendants' attorney's questioning of Woolverton violated the Court's ruling on a motion in limine, the Court should have permitted Woolverton to engage in the same line of questioning with Redden to cure the prejudice resulting from the introduction of the evidence.

On cross-examination, Defendants' attorney asked Woolverton whether he had served time in prison related to his possession of a controlled substance conviction. (Tr. 10.) Plaintiff's attorney immediately objected, before Woolverton answered, and a sidebar conference took place. During the sidebar, the undersigned explained to Defendants' attorney that, pursuant to the rulings on the motions in limine, Woolverton could only be asked the name of the charged offense, the date of the conviction, and the sentence imposed. Woolverton could not be asked whether he served any time in prison. Plaintiff's attorney requested that the jury be advised to disregard Defendants' attorney's question. The Court granted the request, and directed the jury to disregard the question concerning whether Woolverton spent any time in prison. Defendants' attorney then questioned Woolverton regarding the date of the offense and the sentence he received. Woolverton testified that he received probation.

The Court finds that no error occurred in prohibiting Woolverton from inquiring as to whether Redden had been incarcerated. Although Defendants' attorney asked Woolverton

whether he had served time in prison, Woolverton did not answer the question.  Defendant's attorney was admonished that this line of questioning was not permissible, and counsel did not question Woolverton any further on the issue.  Further, the undersigned instructed the jury to disregard the question.  As such, no improper evidence was introduced and Woolverton was not prejudiced.  Because no prejudice occurred, Woolverton was not entitled to ask Redden whether he had been incarcerated.

### 3. Missouri Self-Defense Law

In his seventh ground for relief, Woolverton argues that the Court erred in failing to take judicial notice of Missouri law regarding "the right to defend oneself from attack by police officers during an arrest," as stated in *State v. Thomas*, 625 S.W.2d 115, 122 (Mo. 1981).  (Doc. 164 at 7.)  Woolverton cites the following language from *Thomas*:

> We note at the outset the difference between resisting arrest and defending oneself against excessive force used in effecting the arrest.  As stated in *State v. Nunes*, 546 S.W.2d 759 (Mo.App.1977), "the jurisdictions which have abrogated the common law right to resist an unlawful arrest recognize that the right of self-defense against excessive force remains unimpaired." *Id*. at 762.  An officer is expected to be the aggressor, and is not to be "placed on the same level as ordinary individuals having a private quarrel" or "denied that protection commensurate with the public duty exacted." *State v. Nolan*, 354 Mo. 980, 192 S.W.2d 1016, 1020 (1946).  If, after announcing his intention to arrest, the officer encounters flight or resistance he is bound by Section 544.190 to use "all necessary means to effect the arrest."  Conversely, he is prohibited from using any more force than is necessary to effect the arrest; his doing so will constitute an assault, *See Manson v. Wabash Railroad Company*, 338 S.W.2d 54, 61 (Mo.banc 1960); *State ex rel. Donelon v. Deuser*, 345 Mo. 628, 134 S.W.2d 132, 135 (1939), and generates the right of the arrestee to defend himself against the excess.  This right is a last resort, however. Defendant must have done all he can, consistent with his own safety, to avert the necessity. *State v. Jackson*, 522 S.W.2d 317, 319 (Mo.App.1975).  Hence, it is said "the arrestee forfeits his right to self-defense if he knows that if he desists from physical resistance and submits to arrest, the excessive force will cease." *State v. Nunes*, 546 S.W.2d at 763.

10

625 S.W.2d at 122. Woolverton contends that he should have been allowed to argue that "holding his ground" was allowable under Missouri law under *Thomas*, and that the jury should have been so instructed.

Woolverton further argues that the principle cited in *Thomas* was applied in a Section 1983 excessive force case in *Brossart v. Janke,* No. 3:14-cv-62, 2016 WL 9459263 (D. N.D. Jan. 12, 2016). In *Brossart*, the plaintiff had been convicted of Physical Obstruction of a Governmental Function. *Id.* at *5. Under North Dakota law, a defendant's forceful resistance to an arrest is not justified unless the arresting officers use excessive force. *Id.* The jury was required to find beyond a reasonable doubt that the officer's force was not excessive in order to convict. *Id.* The Court held that Brossart's conviction established that the officer did not use excessive force, thereby barring Brossart's § 1983 excessive force claim under the *Heck* doctrine. *Id.* at *6.

The Court finds that both *Thomas* and *Brossart* are inapposite. In *Thomas*, a defendant convicted of capital murder in the slaying of a police officer argued on appeal that he had the right to defend himself and to resist an unlawful arrest. 625 S.W.2d at 119-120. *Thomas* has no application in the instant civil action under § 1983. Similarly, the *Brossart* Court applied the principles of self-defense to excessive force by officers in the context of a defense to a criminal charge. Although *Brossart* was in fact a civil case, the court did not take judicial notice of the state self-defense law, nor did it instruct the jury on such. The state self-defense law was mentioned only in connection with an analysis under *Heck*. As such, it does not aid Woolverton in any respect.

Woolverton's theory presented at trial was that the Defendant officers orchestrated a coordinated physical attack on him for no reason. He testified that he did not resist arrest at any

11

time, although he "held his ground" after Rudd slammed his head into the patrol vehicle in order to prevent another assault. Woolverton, unlike the defendant in *Thomas*, was not charged with any crime due to the act of holding his ground. Defendants did not argue that they were entitled to apply force because Woolverton was holding his ground after having his head slammed into the patrol vehicle. Instead, Defendants offered a completely different account of the arrest. According to the Defendants, Woolverton was belligerent and resisted arrest from the moment he was pulled over, and they did not slam his head into the patrol vehicle at any time. The Court denied Woolverton's request to take judicial notice of Missouri self-defense law because it was not relevant to the facts of this civil case, and would simply confuse the issues for the jury. Woolverton has failed to demonstrate this decision was erroneous.

**4. Kaitlyn Palmer Cross-Examination**

In his eighth ground for relief, Woolverton argues that the Court erred in prohibiting him from questioning witness Kaitlyn Palmer regarding her breakup with Defendant Redden and the subsequent order of protection proceedings under Rule 608(b). He contends that Defendants opened the door to such testimony when they asked Ms. Palmer if the breakup was amicable and she testified that it was not amicable.

The undersigned precluded Woolverton from eliciting testimony from Ms. Palmer regarding the breakup and subsequent order of protection under Rule 404(b) because this evidence is irrelevant to the issues of excessive force and would be highly prejudicial to Defendants. Ms. Palmer testified truthfully that the breakup was not amicable. The evidence was not admissible under Rule 608(b), as evidence of the breakup was not probative of Ms. Palmer's character for truthfulness. Thus, Woolverton's argument lacks merit.

### 5. Woolverton's Felony Guilty Plea

Woolverton next argues that Defendants' "excessive reliance" on Woolverton's guilty plea was prejudicial.

The Court permitted Defendants to question Woolverton regarding his guilty plea to a felony unlawful use of a weapon charge for impeachment purposes, because he failed to disclose this information in answering Defendants' Interrogatories. (Tr. 1-3.) When asked by Defendants' attorney if he listed every conviction or plea of guilty to a felony as asked by Interrogatory No. 9, Woolverton responded in the affirmative. (Tr. 4.) Defendants' attorney then cited Woolverton's testimony on direct examination that he had pled guilty to the felony crime of unlawful use of a weapon. *Id.* Woolverton responded that that charge was a suspended imposition of sentence and was not a felony. *Id.* A lengthy colloquy took place, during which Woolverton repeated his erroneous belief that the charge of unlawful use of a weapon was not a felony. (Tr. 4-6.) After a sidebar conference, the Court permitted Defendants to show Woolverton court documents reflecting that his guilty plea was to a felony charge. (Tr. 6-8.) When Woolverton continued to deny that he pled guilty to a felony crime, Defendants offered the exhibit into evidence without objection. (Tr. 9.)

Defendants were entitled to impeach Woolverton regarding his guilty plea to the felony charge of unlawful use of a weapon pursuant to Federal Rule of Evidence 609. To the extent this testimony was lengthy or "excessive" as Woolverton alleges, this was solely due to Woolverton's refusal to admit he had in fact pled guilty. The Court did not err in allowing this evidence.

### 6. Redden's Surrender of Law Enforcement Certificate

In his final claim of evidentiary error, Woolverton argues that the Court erred in

prohibiting evidence regarding the surrender of Redden's law enforcement certificate and the circumstances surrounding his separation from his position as Wardell police chief. Woolverton argues that this evidence is relevant to Redden's competency as a police officer, which affects the qualified immunity analysis.

The Court has discussed the circumstances surrounding Redden's resignation extensively with respect to Woolverton's third, fourth, and fifth grounds for relief. The resignation resulted from events occurring in Redden's personal life and did not relate to his treatment of arrestees in the line of duty. As such, the proposed evidence is irrelevant to Redden's competence as a police officer and was properly excluded under Federal Rules of Evidence 401, 402, 403, and 404.

For the reasons stated above, the Court's evidentiary rulings were not improper, and there was no prejudice justifying a new trial.

## IV. Ground 11

In his final claim, Woolverton argues that the trial in this case occurred "during a period of civil unrest in this nation in Kenosha Wisconsin." (Doc. 164 at 12.) He states that the "escalation of the unrest was reported in the media and may have prejudiced the jury." *Id.* Woolverton concluded that, "[i]n fairness a new trial should be ordered." *Id.*

Woolverton fails to explain the nature of this unrest or how unrest occurring in Kenosha, Wisconsin had any bearing on this trial conducted in Cape Girardeau, Missouri. This conclusory allegation is insufficient to establish prejudice to warrant a new trial.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for New Trial (Doc. 163) is **denied.**

/s/ Abbie Crites-Leoni
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 10th day of November, 2020.